**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 7 |
| R. SUSAN WOODS, | ) ) | Case No. 18-30549-EDK |
|  Debtor | ) ) ) |  |

**MEMORANDUM OF DECISION**

I.    FACTS AND TRAVEL OF THE CASE

On July 10, 2018, R. Susan Woods (the "Debtor") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code[1]. Prepetition, the Debtor owned real property located at 43 West Street in Hadley, Massachusetts (the "West Street Property") subject to a mortgage held by Wells Fargo Bank, N.A. ("Wells Fargo"). After the Debtor defaulted on mortgage payments, Wells Fargo first attempted to foreclose in 2011. The Debtor disputed Wells Fargo's right to foreclose, but ultimately lost on appeal in the First Circuit Court of Appeals. Wells Fargo proceeded with a foreclosure sale in May 2017 at which time the West Street Property was sold to Alinas Real Estate, LLC ("Alinas"). Alinas obtained a judgment for possession. The Debtor filed this bankruptcy case in an effort to prevent a scheduled eviction of the Debtor from the West Street Property.

On July 17, 2018, Alinas moved for relief from the automatic stay to proceed with the eviction, which the Debtor opposed.[2] The Court granted relief from the automatic stay and overruled the Debtor's objections based on arguments regarding the validity of the underlying

---

[1] *See* 11 U.S.C. §§ 101 *et al.*

[2] *See* Motion of Alinas Realty, LLC [sic] for Relief from the Automatic Stay, July 17, 2018, ECF No. 13.

1

foreclosure sale and Alinas's right to possession as the current owner of the West Street Property, holding: "this Court is prohibited from considering the Debtor's arguments regarding the validity of the foreclosure sale and [Alinas's] right to proceed with eviction proceeding under principles of res judicata and collateral estoppel and by the Rooker-Feldman doctrine . . . ." July 19, 2018 Order, ECF no. 27 (the "July 19, 2018 Order").

Not satisfied with this outcome, the Debtor sought an evidentiary hearing and leave to file an affidavit signed by Marie McDonnell detailing alleged infirmities with assignments of mortgage related to a second property (the "McDonnell Affidavit"), asserting that the McDonnell Affidavit was relevant to the Debtor's arguments with regard to the West Street Property.[3] While the Court granted leave for the Debtor to file the affidavit, the Court did not affirm the McDonnell Affidavit's relevance to any matters then pending before the Court.[4] The request for an evidentiary hearing was denied for the reasons previously stated in the July 19, 2018 Order.[5] Thereafter, the Court twice denied the Debtor's requests for reconsideration of the Court's July 19, 2018 Order granting relief from stay, which again relied on arguments that the underlying foreclosure sale was invalid.[6] In denying the second request for reconsideration, the Court reiterated that "the Court is prohibited by principles of res judicata, collateral estoppel, and the Rooker-Feldman doctrine from determining the validity of the foreclosure sale and [Alinas's] right to proceed with the eviction proceeding." August 6, 2018 Order, ECF No. 77.

---

[3] *See* Motion to Request an Evidentiary Hearing, July 20, 2018, ECF No. 32; Motion in Support of the McDonnell Affidavit, July 23, 2018, ECF No. 37.

[4] *See* August 2, 2018 Order, ECF No. 67.

[5] *See* July 24, 2018 Order, ECF No. 45.

[6] *See* Motion to Reconsider, August 1, 2018, ECF No. 60; Emergency Motion, August 6, 2018, ECF No. 76.

Despite the Court's clear ruling that the validity of the West Street Property foreclosure could not be relitigated in this Court, the Debtor continued to file pleadings indicating that the ownership of the West Street Property remained contested due to infirmities in the foreclosure sale.[7] Over the two and a half years since the July 19, 2018 Order was issued, the Court has continued to remind the Debtor, in subsequent orders and remarks made in open court, that the Court cannot revisit issues regarding the foreclosure and current ownership of the West Street Property, as it is prohibited from doing so by principles of res judicata, collateral estoppel, and the Rooker-Feldman doctrine.[8]

Prepetition, the Debtor also owned a second property located at 70 Russell Street in Hadley, Massachusetts (the "Russell Street Property"), subject to a mortgage held by Goldman Sachs Mortgage Company ("Goldman Sachs"). Goldman Sachs foreclosed on the Russell Street Property after the Debtor defaulted on the mortgage payments and became the owner of the property at the foreclosure sale. Shortly after the petition date, on August 17, 2018, Goldman Sachs moved for relief from the automatic stay to proceed with litigation concerning the foreclosure brought by the Debtor and pending in state court[9]. As with the West Street Property, the Debtor opposed the request for relief from the automatic stay on grounds that the underlying foreclosure sale was invalid.[10] Prior to a ruling on the motion, Goldman Sachs's request for relief from the automatic stay was withdrawn.

---

[7] *See* Copy of Appeal, October 1, 2018, ECF No. 125; Rebuttal, November 26, 2018, ECF No. 187; Objection to Claim, November 26, 2018, ECF No. 188; Second Objection to Claim, January 7, 2019, ECF No. 222; Objection, June 5, 2019, ECF No. 368.

[8] *See* June 26, 2019 Order, ECF No. 373; June 26, 2019 Order, ECF No. 374; August 8, 2019 Order, ECF No. 416.

[9] *See* Motion of Goldman Sachs for Relief from the Automatic Stay, August 17, 2018, ECF No. 84.
[10] *See* Opposition, August 31, 2018, ECF No. 99; Objection, October 10, 2018, ECF No. 129.

In the interim, Goldman Sachs transferred its ownership of the Russell Street Property to Joseph B. Collins, the Chapter 7 trustee of the Debtor's bankruptcy estate (the "Trustee") by release deed. In various motions and pleadings, the Debtor has continuously attacked the validity and effect of the deed, the propriety of the Trustee's acceptance of the deed, and the validity of the underlying foreclosure of the Russell Street Property.[11]

On January 7, 2019, the Trustee filed a motion to sell the Russell Street Property.[12] The Debtor opposed the sale on various grounds, again challenging the validity of the bankruptcy estate's deed to the Russell Street Property and the validity of the underlying foreclosure sale.[13] Those objections were overruled, and the Court granted the motion to sell the property on February 14, 2019. ECF Nos. 258, 260. Despite being ordered to vacate the Russell Street Property, the Debtor refused to do so, resulting in orders of contempt and an order enlisting the assistance of the United States Marshal's Service to evict the Debtor if necessary.[14] The Debtor appealed the order permitting the sale of the Russell Street Property, together with the ancillary orders requiring her to vacate and turn the property over to the Trustee. Each of those appeals were dismissed by the First Circuit Court of Appeals on February 10, 2020.

Undeterred, the Debtor renewed her attacks on Goldman Sachs's underlying ownership of the Russell Street Property and the validity and effect of the deed of the Russell Street Property to

---

[11] *See* Motion to Reverse the Acceptance of the Release Deed, October 30, 2018, ECF No. 140; Motion to Remove, October 30, 2018, ECF No. 142.

[12] *See* Motion to Sell, January 7, 2019, ECF No. 220.

[13] *See* Objection, February 8, 2019, ECF No. 247; Objection, February 8, 2019, ECF No. 248.

[14] *See* February 15, 2019 Order, ECF No. 267; February 26, 2019 Order, ECF No. 303; February 28, 2019 Order, ECF No. 312.

4

the bankruptcy estate in a motion to void the sale filed on March 27, 2020.[15] The Debtor has appealed the Court's order denying that motion, which appeal remains pending.

In the meantime, the Debtor has twice asked this Court to remove the Trustee from this case, alleging, *inter alia*, that the Trustee had undertaken an "illegal eviction" of the Debtor from the Russell Street Property, that the Trustee had used "tricks of process," that the Trustee's actions in the case were "meant to trigger adverse responses" related to the Debtor's various medical conditions, and that the Trustee "lacks the requisite integrity for the role of Trustee."[16] Because the Court found that the Trustee had acted appropriately to discharge his statutory duties in the case, those requests for removal were denied.[17]

Despite the Court having repeatedly and clearly articulated to the Debtor that the Trustee has acted in accordance with his duties as trustee of the Debtor's bankruptcy estate, the Debtor has continued to disparage the Trustee in various pleadings, stating that the Trustee had engaged in "illegal activities designed to fleece and further compromise [the Debtor],"[18] that the Trustee had engaged in a "willful manipulation of federal law," that the Trustee "must be stopped from engaging in further illegal actions, and he must be held accountable for his illegal actions to date," that the Trustee had attempted to "to obfuscate his illegal acts and to manipulate the Court," that the Trustee "may want to wake up and reform his unethical, and potentially criminal, ways," that

---

[15] *See* Motion to Void Sale, March 27, 2020, ECF No. 475.

[16] *See* Motion to Remove, October 30, 2018, ECF No. 142; Motion to Recuse, August 1, 2019, ECF No. 401.

[17] *See* December 6, 2018 Order, ECF No. 201; October 3, 2019 Order, ECF No. 428.

[18] Objection, October 21, 2019, ECF No. 435.

the Debtor's "ongoing appeals may lead to criminal charges against the Trustee," and that the Trustee should be referred for disciplinary proceedings.[19]

On May 26, 2020, the Trustee filed a motion to restrict the Debtor's vexatious litigation by prohibiting the Debtor from filing further pleadings in the case. ECF No. 497. At the hearing on that motion, which the Court denied without prejudice, the Court strongly cautioned the Debtor that if the Debtor continued to raise arguments that had been repeatedly overruled by the Court and rejected on appeal, the Court would entertain a further motion to restrict the Debtor's filings in this case.

Despite this admonition, and following the District Court's dismissal of the Debtor's appeal of the Court's order denying the motion to void the sale of the Russell Street Property (which dismissal has been appealed to the First Circuit Court of Appeals), the Debtor has now filed a "Motion to Compel the Banks to Produce the Wet Ink Notes to the Subject Properties," through which the Debtor seeks an order compelling Goldman Sachs and Wells Fargo to produce the mortgage notes with original signatures "upon which they based their purported foreclosure auctions" of the West Street and Russell Street Properties (the "Motion to Compel Production"). In the Motion to Compel Production, the Debtor renews the plethora of previously asserted arguments regarding the foreclosures and ownership of the West Street and Russell Street Properties, asserting that the ownership of the properties remains up for debate in this Court.

The Trustee has now filed a second "Motion to Restrict Vexatious Litigation," (the "Motion to Restrict"), in which he renews his request that this Court prohibit the Debtor from filing "any motion, objection, request for orders, or any other submission, including notices of appeal . . . without leave of the Court." The Debtor has opposed the Motion to Restrict, and has cross moved to restrict further actions and filings by the Trustee, restating her baseless allegations

---

[19] Objection and Cross-Motion, June 30, 2020, ECF No. 503.

that the Trustee has acted improperly in the case, has engaged in vexatious litigation, and should be referred for disciplinary review.

II.     DISCUSSION

"Federal courts plainly possess discretionary powers to regulate the conduct of abusive litigants." *Cok v. Family Court of Rhode Island*, 985 F.2d 32, 34 (1st Cir. 1993). "This power encompasses the Court's ability to enjoin litigants who abuse the court system by filing groundless and vexatious litigation." *Langadinos v. Board of Trustees of the University of Massachusetts*, 2013 WL 5513796, *6 (D. Mass. Sept. 30, 2013) (*citing Gordon v. United States Dep't of Justice*, 558 F.2d 618, 618 (1st Cir. 1977) (*per curium*)); *see also Elbery v. Louison*, 201 F.3d 427 (1st Cir. 1999) ("[I]n extreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties, an injunction barring a party from filing and processing frivolous and vexatious lawsuits may be appropriate.")

The Debtor has clearly evidenced a "propensity to file repeated [pleadings] involving the same or similar claims of a 'frivolous or vexatious nature.'" *Langadinos*, 2013 WL 5513796 at *6 (quoting *Castro v. United States*, 775 F.2d 399, 409 (1st Cir. 1985) (*per curiam*), *overruled on other grounds by Stevens v. Dep't of the Treasury*, 500 U.S. 1 (1991)). The Debtor's behavior in this case "has resulted in the expenditure by the courts of significant time and resources in processing and deciding [ ] filings and pleadings, and by [other parties] in responding as well." *Gambee v. Wells Fargo Bank, NA*, 2019 WL 7565451, *8 (D. Mass. June 26, 2019).

At this juncture, the Debtor "has more than had her day in court. . . . [S]he has availed herself both in state and federal court of every imaginable means to challenge" the decisions of this and other courts and "has lost at every turn." *In re Murphy*, 598 F.Supp.2d 121, 124 (D. Me. 2009). The Debtor has repeatedly ignored the Court's multiple orders explaining that the Court

7

cannot relitigate issues involving the foreclosure and ownership of the West Street Property. And with regard to the Russell Street Property, as the District Court has noted, "Woods's challenge to the sale of that house in March 2019 was previously resolved against her through three levels of federal courts, and there is no legal or equitable justification for permitting her to relitigate that challenge now." *In re Woods*, 2020 WL 8265812, *2 (D. Mass. Oct. 22, 2020). Her ongoing efforts to cast aspersions on the Trustee's actions on legal and ethical grounds have been unavailing – both in this Court and on appeal; "her submissions . . . are replete with vitriolic but (on the objective record) unfounded asseverations of misconduct by the Trustee and requests that a variety of actions be undertaken with respect to him (ranging from his discharge as Trustee to criminal investigations)." *Id*.

The Debtor has previously been "warned that such filing restrictions are being contemplated" and has taken the opportunity to oppose them. *In re CK Liquidation Corp.*, 2006 WL 1302614, *3 (Bankr. D. Mass. May 9, 2006) (*citing Cok*, 985 F.2d at 35). But while "the use of broad filing restrictions against *pro se* plaintiffs 'should be approached with particular caution,'" *Cok*, 985 F.2d at 35 (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)), the Court finds that filing restrictions are necessary in this case. The Court finds that an order imposing or threatening sanctions under Federal Rule of Bankruptcy Procedure 9011 is unlikely to be a deterrent. The Debtor has taken no heed of the Court's explanations in its orders and in open court that the issues repeatedly raised by the Debtor are barred by previous rulings. And the Debtor is unlikely to be deterred by possible monetary sanctions given the Debtor's continued protestations of indigency.

For these reasons, the Court will enter an order restricting the Debtor's filings in this case, and in any associated adversary proceedings, but will not issue an order as broad as that requested by the Trustee. The restriction on the Debtor's filings will apply only to filings made *pro se* and

will only apply to requests for affirmative relief made by the Debtor.  *See CK Liquidation*, 2006 WL 1302614, 3 ("it would be inappropriate" to restrict [the Debtor's] defense with respect to any matter where [the Debtor] is involuntarily drawn into a dispute as a named respondent or defendant]").  And "this Court should not, and cannot, restrict any filings which are incident to an appeal by [the Debtor] from any order of this Court."  *Id.*  In sum, the Court will enjoin the Debtor from filing, *pro se*, any papers in this Chapter 7 case which seek relief based on arguments that have previously been raised and rejected or which contain scurrilous or inflammatory accusations against the Trustee or any other party.  To enforce the terms of the order, any motions or affirmative requests for relief that are received from the Debtor will be subject to *in camera* review by the Court and will be returned to the Debtor if they violate the order or will be docketed by the Clerk if the Court finds that the document complies with the order.  In the event the Debtor files a responsive pleading, including any response that requests affirmative relief, that is docketed in this case, interested parties will be excused from filing a further response or sur-reply unless the Court enters an order indicating that they are requested or invited to do so.

The Debtor's Motion to Compel Production will be denied, as the motion seeks relief unrelated to any matter pending before this Court and relies on arguments that the Debtor has previously asserted in this case, which arguments have been rejected by this Court and on appeal.  The Debtor's cross-motion to restrict further actions and filings by the Trustee will be denied.  Separate orders in conformity with this memorandum of decision will issue forthwith.

DATED: March 11, 2021                    By the Court,

                                                                Elizabeth D. Katz
                                                                United States Bankruptcy Judge